INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE, AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, ET AL. *v.* BROCK,
SECRETARY OF LABOR

No. 84–1777.   Argued March 25, 1986—Decided June 25, 1986

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 293. POWELL, J., filed a dissenting opinion, *post*, p. 296.

*Marsha S. Berzon* argued the cause for petitioners. With her on the briefs were *Jordan Rossen, Leonard Page,* and *Stephen P. Berzon.*

*Deputy Solicitor General Kuhl* argued the cause for respondent. With her on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Mark I. Levy, Leonard Schaitman,* and *William G. Cole.**

JUSTICE MARSHALL delivered the opinion of the Court.

This suit was brought by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and several of its members challenging the Secretary of Labor's interpretation of the eligibility provisions of the Trade Act of 1974, 88 Stat. 1978, 19 U. S. C.

---

*\*Benjamin W. Heineman, Jr.,* and *Carter G. Phillips* filed a brief for the Chamber of Commerce of the United States et al. as *amici curiae* urging reversal.

§ 2101, which provides benefits to workers laid off because of competition from imports. The issues presented here are whether the Union has standing to sue in federal court on behalf of its affected members and whether such a suit can be maintained without the joinder as defendants of the state agencies that administer the benefit program in question.

# I

To aid workers who have lost their jobs because of import competition, the Trade Act of 1974 established a program of trade readjustment allowance (TRA) benefits as a supplement to state unemployment insurance benefits. 19 U. S. C. § 2291. Under the Act's scheme, a group of workers, their union, or some other authorized representative may petition the Secretary of Labor to certify that their firm has been adversely affected by imports. §§ 2271–2273. If the Secretary issues a certificate of eligibility for such a group, workers within that group who meet certain standards of individual eligibility may then apply for and receive TRA benefits. These benefits are funded entirely by the Federal Government, as is the cost of administering the program.

While the Secretary of Labor cannot delegate his certification duties, the Act does permit him to contract out the job of making individual eligibility determinations to the state agencies that administer state unemployment insurance programs. The Secretary has in fact entered into such agreements with unemployment insurance agencies in each State and in the District of Columbia and Puerto Rico. Pursuant to the agreements, each of these "cooperating Stat[e] agencies," § 2311(a), becomes an "agent of the United States," § 2313(a), charged with processing applications and using federal funds to pay TRA benefits to individuals eligible under the Act. Review of eligibility decisions by these agencies is to be "in the same manner and to the same extent as determinations under the applicable State law and only in that

manner and to that extent." § 2311(d).   In making these eligibility determinations, however, state authorities are bound to apply the relevant regulations promulgated by the Secretary of Labor and the substantive provisions of the Act.   29 CFR § 91.51(c) (1985).

To qualify for TRA benefits under the Act, a worker must have "had, in the 52 weeks immediately preceding . . . separation, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm."   19 U. S. C. § 2291(2) (1976 ed.).   In a 1975 policy handbook, the Secretary advised the state agencies that they should not count toward these 26 weeks

> "[p]eriods in which service is not being performed, such as leave of absence, sick or annual leave or vacation leave, and periods in which service is being performed for other than the adversely affected employer, such as military service, temporary loan or detail to another employer, or work for another employer while attached to the adversely affected employer . . . ."   App. 85.

These guidelines were superseded in August 1981 by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub. L. 97–35, 95 Stat. 357, which amended the Trade Act to provide that "leave for purposes of vacation, sickness, injury, maternity, or inactive duty or active duty military service for training" is to be included in determining an individual's period of employment with an adversely affected firm.   19 U. S. C. § 2291(a)(2)(A).   The effect of this amendment, however, was limited to TRA benefits "payable for weeks of unemployment which begin after September 30, 1981." OBRA, § 2514(a)(2)(B), 95 Stat. 889, note following 19 U. S. C. § 2291.

Shortly after the passage of the OBRA, petitioners, the UAW and 11 of its members—some of whom had been denied benefits for weeks of employment before October 1, 1981, because of the interpretation of § 2291 in the 1975 handbook and

some of whom were defending the award of benefits against appeals by their respective state agencies—filed this suit in District Court against the Secretary of Labor. Claiming that the Secretary's interpretation had been incorrect and, to the extent that it related to military leave, in violation of the Veterans' Employment and Readjustment Act of 1972, 38 U. S. C. § 2013, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U. S. C. §§ 2014, 2024, petitioners sought a declaration that the interpretation was improper and an injunction requiring the Secretary both to notify all cooperating state agencies of the invalidity of the handbook and to direct those agencies to review and reprocess all cases in which TRA benefits had been denied.

On cross-motions for summary judgment, the District Court first rejected the Secretary's argument that § 2311(d), which makes entitlement determinations reviewable only "in the same manner and to the same extent as determinations under the applicable State law," precluded federal jurisdiction over the action. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America* v. *Donovan,* 568 F. Supp. 1047, 1050–1052 (DC 1983). It noted:

> "In the typical case the Act envisions that a disappointed applicant for TRA benefits appeals to the state court the administering agency's application of the pertinent guidelines or regulations to the facts of his case. The instant case, however, is atypical. Here, plaintiffs allege that the guidelines themselves are invalid; they do not contest the particulars of the application of the guidelines to the facts of individual cases." *Id.,* at 1050.

On the merits of the complaint, the court held that the 1975 guidelines were indeed inconsistent with the Trade Act and the Veterans' Readjustment Assistance Act of 1972. It therefore ordered the Secretary to notify all cooperating state agencies of the Act's proper construction and to direct those agencies to process anew, applying the proper eligibil-

ity standards, any TRA claims wrongfully denied as a result of the 1975 guidelines.

Without reaching the merits, a divided panel of the Court of Appeals reversed. 241 U. S. App. D. C. 106, 746 F. 2d 839 (1984). The court first noted that the UAW "is not an appropriate representative of those TRA claimants who were not its members," *id.*, at 109, 746 F. 2d, at 842, and that, at this stage of the proceedings, it would be "impermissible" to treat the suit as a class action on behalf of all disappointed claimants, *id.*, at 108, 746 F. 2d, at 841. The court then held that the UAW could not even represent the interests of those claimants who *were* union members. It reasoned:

> "In this case . . . , the Union has alleged no injury to itself; nor are the members' associational rights affected. . . . It seeks standing solely because some of the claimants, but far from all, were members of the Automobile Workers Union. Many of the members of the Union, however, have not had their employment terminated because of increasing imports. They have no interest in this case and no standing to seek any judicial relief. Those members of the Union who were disappointed claimants of the benefits have been injured, or denied advantages, in various amounts. The controversy could draw to a conclusion in these proceedings only if each individual claimant was a party plaintiff." *Id.*, at 109, 746 F. 2d, at 842.

Turning to the six named plaintiffs who claimed to have been denied administrative awards of benefits because of an improper construction of § 2291, the court held that, even assuming that § 2311(d) did not preclude federal jurisdiction, "no relief could properly be awarded in this action" because plaintiffs had failed to join as party-defendants the cooperating state agencies that had denied their claims. *Id.*, at 111, 746 F. 2d, at 844. Relying on the requirement of § 2311(d) "that review of determinations with respect to TRA benefits

must be 'in the same manner' as a determination under the state's unemployment insurance law," the court concluded:

> "Judicial review of a state agency's determination of benefits under its own unemployment insurance law may not be had without the presence of the state agency, [and] since the state agencies are outside the district court's jurisdiction, it may not be had here." *Id.*, at 110, 746 F. 2d, at 843.

We granted certiorari to consider the procedural issues raised by the Court of Appeals' decision, 474 U. S. 900 (1985). We now reverse.

## II

The first question raised by the Court of Appeals' decision is a simple one: Does the UAW have standing to challenge the 1975 policy directive that allegedly resulted in the denial of TRA benefits to thousands of the Union's members? See Complaint ¶ 69. As the Court of Appeals properly noted, "the Union has alleged no injury to itself; nor are the members' associational rights affected," 241 U. S. App. D. C., at 109, 746 F. 2d, at 842. The inquiry here is thus whether the UAW may proceed solely as a representative of those of its members injured by the Secretary's policy.

It has long been settled that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members. *E. g., National Motor Freight Assn.* v. *United States*, 372 U. S. 246 (1963)." *Warth* v. *Seldin*, 422 U. S. 490, 511 (1975). While the "possibility of such representational standing . . . does not eliminate or attenuate the constitutional requirement of a case or controversy," *ibid.;* see *Sierra Club* v. *Morton*, 405 U. S. 727 (1972), we have found that, under certain circumstances, injury to an organization's members will satisfy Article III and allow that organization to litigate in federal court on their behalf. See *Simon* v. *Eastern Kentucky Welfare Rights*

*Organization*, 426 U. S. 26, 40 (1976). In *Warth, supra,* we set out the nature of these circumstances:

> "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Id.,* at 511.

Subsequently, this doctrine was stated as a three-part test:

> "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt* v. *Washington State Apple Advertising Comm'n,* 432 U. S. 333, 343 (1977).

The Court of Appeals here held that the UAW could not litigate its challenge to the Secretary's policy directive on behalf of its members because it found that the third of these conditions was not present in this case. Defending the court's decision, however, the Secretary argues that none of the three has been satisfied. We will consider each in turn.

## A

Addressing the first part of the analysis in *Hunt,* the Secretary does not dispute petitioners' claim that a large number of UAW members were denied TRA benefits by their respective state agencies as a result of his Department's interpretation of § 2291(2) between 1975 and 1981. His argument is not

that all members whom the UAW purports to represent have suffered no injury. Rather, he relies on 19 U. S. C. § 2311(d), which makes TRA entitlement determinations by state agencies "subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent," and maintains that not a single member of the UAW—or any other aggrieved TRA claimant—can challenge the 1975 policy directive without running afoul of settled principles of administrative finality and judicial comity, as well as statutory intent.

The reasons the Secretary gives for the preclusion of various UAW members differ, but the end result is the same. TRA claimants who were awarded benefits and whose cases were finally resolved in their favor on judicial review cannot challenge the Secretary's interpretation of the Trade Act because they were not injured by it. At the same time, claimants denied benefits in final state judicial decisions are barred by res judicata from raising any eligibility claim in federal court. As for workers, who, at the time the suit was brought, had claims pending in state court after either favorable or unfavorable administrative determinations, the Secretary argues that it would "be contrary to Congress's incorporation of the state system into the administration of the Trade Act, and an affront to the integrity and authority of the state courts, to allow claimants whose cases were under state judicial review to pretermit that process by proceeding in federal court." Brief for Respondent 16. Workers with claims still pending in state administrative proceedings cannot complain, according to the Secretary, because they have yet to suffer any cognizable injury and may not circumvent state processes. And workers who failed to seek judicial review of adverse administrative determinations should also be barred from coming to federal court because their inaction has allowed those determinations to become final.

The Secretary's arguments simply miss the point of petitioners' claims. The statutory challenges raised here will no doubt affect the outcome of individual entitlement determinations if petitioners are successful on the merits of their suit. However, this action does not directly seek TRA benefits. In accordance with § 2231(d), decisions as to the eligibility of individual claimants for benefits will remain the province of state authorities. The question is thus not whether there are any individual members of the UAW who might have circumvented state administrative and judicial processes in order to bring the claims that the UAW now seeks to litigate. Rather, it is whether there are members of the UAW who have yet to receive either the TRA benefits they believe they are due or a final state judgment that would preclude further consideration of their eligibility claims. Such individuals would have the live interest in challenging the Labor Department guidelines that would support standing in this case. And there is no question here that among the UAW's members are many such individuals.

At bottom, the Secretary's invocation of administrative exhaustion principles is merely a variant of his argument that § 2311(d) irrevocably commits to state processes all claims relating to TRA entitlements. Citing this Court's recent decision in *Green* v. *Mansour*, 474 U. S. 64 (1985), he argues that "this suit, like *Green*, is an impermissible attempt to gain a federal judicial ruling to serve as the predicate for a state claim that could not be brought directly in federal court." Brief for Respondent 21. In *Green*, this Court held that when the Eleventh Amendment bars a federal court from directly ordering a State to pay damages for a past constitutional violation, the court cannot enter a declaratory judgment that plaintiffs might use as res judicata in state-court damages actions. The Eleventh Amendment bar that precluded equitable relief in *Green*, however, has little in common with 19 U. S. C. § 2311(d). The Trade Act provision does not foreclose review in federal court of every claim

relating to the Act's application by federal and state officials. While the Act vested state courts with exclusive jurisdiction over claims challenging a state agency's application of federal guidelines to the benefit claims of individual employees, there is no indication that Congress intended § 2311(d) to deprive federal district courts of subject-matter jurisdiction under 28 U. S. C. § 1331(a) (1976 ed.) to hear statutory or constitutional challenges to the federal guidelines themselves. Indeed, we have frequently upheld a contrary principle: that although review of individual eligibility determinations in certain benefit programs may be confined by state and federal law to state administrative and judicial processes, claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court. See *Ohio Bureau of Employment Services* v. *Hodory*, 431 U. S. 471 (1977); *Fusari* v. *Steinberg*, 419 U. S. 379 (1975); *Christian* v. *New York State Dept. of Labor*, 414 U. S. 614 (1974); *California Dept. of Human Resources Development* v. *Java*, 402 U. S. 121 (1971); cf. *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 678 (1986) (judicial review available for challenge to Secretary's regulations even where statute bars review of determinations of specific benefit amounts). In *Christian, supra*, for example, former employees denied unemployment compensation benefits in state proceedings brought an action in District Court alleging that the Secretary of Labor and the state agency acting as his agent had not adhered to the procedural guarantees of the Unemployment Compensation for Federal Employees Program. Even though the provision governing review of benefit determinations in that program, 5 U. S. C. § 8502(d), is nearly identical to 19 U. S. C. § 2311(d), we noted that the court had jurisdiction over plaintiffs' claims against both state and federal defendants. 414 U. S., at 617, n. 3.

As we find § 2311(d) to pose no bar to petitioners' claims, we see no jurisdictional impediment to this suit in federal

court challenging a federal official's interpretation of a federal statute. In view of the extent to which state agencies are bound to adhere to the Secretary's directives with respect to the administration and interpretation of the Trade Act, see *infra*, at 292, such a direct challenge is not only proper, but appropriate.

B

Having found that at least some members of the UAW would have had standing to bring this suit in their own right, we need pause only briefly to consider whether the second of *Hunt*'s preconditions for associational standing has been satisfied here. For there is little question that the interests that the UAW seeks to protect in this suit are "germane to the organization's purpose," *Hunt*, 432 U. S., at 343. The UAW's Constitution announces that one of the Union's goals is "to work for legislation on a national scale, having as its object the establishment of real social and unemployment insurance, the expense of which is to be borne by the employer and the Government." Constitution of the International Union, UAW, Art. 2, § 4 (quoted in Brief for Petitioners 14–15). In pursuit of that goal, the leadership of the UAW, along with other representatives of organized labor, lobbied hard for the establishment of the TRA benefit program. See, *e. g.*, Trade Reform Act of 1973: Hearings on H. R. 6767 before the House Committee on Ways and Means, 93d Cong., 1st Sess., pt. 3, pp. 849–914 (1973) (testimony of Leonard Woodcock, President of the UAW).

Recognizing the interest of organized labor in obtaining benefits for its workers, Congress gave unions a role in the administration of the TRA program, allowing them to petition the Secretary to certify that particular firms have been adversely affected by imports. 19 U. S. C. §§ 2271–2273. Once the issuance of such a certification permits individual union members to file for TRA benefits, a union like the UAW—whose members, we are told, have constituted over 40% of the workers certified as eligible to apply for TRA

benefits between April 1975 and January 1984, Brief for Petitioners 15—surely maintains an interest in ensuring that its members receive all the benefits available under the Act.

## C

Relying on our decision in *Warth* v. *Seldin*, 422 U. S. 490 (1975), the Court of Appeals concluded that the UAW had failed to satisfy the last of the preconditions for associational standing set out in *Hunt*. In *Warth*, we noted that even where the members of an association have suffered the sort of injury that might otherwise support a suit by the association, "whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." 422 U. S., at 515. An organization of construction firms, we held, could not seek damages for the profits and business lost by its members because "whatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Id.*, at 515–516. Each member therefore had to be a party to the suit, and the association lacked standing to proceed on his behalf. Likening the instant case to *Warth*, the Court of Appeals noted that because those UAW members "who had suffered an alleged injury had done so in varying amounts requiring individualized proof," the relief sought here could not be obtained unless "each individual claimant was a party plaintiff." 241 U. S. App. D. C., at 109, 746 F. 2d, at 842.

Like the Secretary in his arguments before this Court, the Court of Appeals misconstrued the nature of petitioners' claims. Neither these claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions. Cf. *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 40, n. 8 (1981). And the relief

requested, and granted by the District Court, leaves any questions regarding the eligibility of individual TRA claimants to the state authorities given jurisdiction over such questions by 19 U. S. C. § 2311(d). See *Bowen* v. *City of New York*, 476 U. S. 467, 485 (1986) ("[B]y ordering simply that the claims be reopened at the administrative level, the District Court showed proper respect for the administrative process"). Thus, though the unique facts of each UAW member's claim will have to be considered by the proper state authorities before any member will be able to receive the benefits allegedly due him, the UAW can litigate this case without the participation of those individual claimants and still ensure that "the remedy, if granted, will inure to the benefit of those members of the association actually injured," *Warth, supra,* at 515.

### III

As an alternative basis for affirming the Court of Appeals, the Secretary asks that we reconsider and reject the principles of associational standing set out in *Hunt*. He suggests that "at least absent a showing of particularized need," members of an association who wish to litigate common questions of law or fact against the same defendant be permitted to proceed only pursuant to the class-action provisions of Federal Rule of Civil Procedure 23. Brief for Respondent 34.*

Both associational standing and Rule 23 are "designed to serve precisely the same purpose," according to the Secretary: "to facilitate, in a fair and efficient manner, the collective adjudication of the common rights of an association's members." *Id.,* at 37. Rule 23, however, contains special

---

*Even while contending that UAW members should have brought their claims in the form of a class action, the Secretary argues that, at this stage of the litigation, certification of the members as a class would be inappropriate. Because we find that the UAW has standing to maintain this action on behalf of its affected members, we need not consider whether it would have been proper to treat this suit as a class action once the District Court had entered judgment.

safeguards to ensure that the diverse interests of class members are properly represented by the named plaintiff seeking to bring a case on their behalf. No such adequacy of representation, the Secretary argues, is guaranteed by the approach this Court has taken to associational standing in *Warth, Hunt,* and other cases. Yet an association might prove an inadequate representative of its members' legal interests for a number of reasons. It might lack resources or experience or might bring lawsuits without authorization from its membership. In addition, the litigation strategy selected by the association might reflect the views of only a bare majority—or even an influential minority—of the full membership.

The Secretary's presentation, however, fails to recognize the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. "Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." Note, From Net to Sword: Organizational Representatives Litigating Their Members' Claims, 1974 U. Ill. L. Forum 663, 669. These resources can assist both courts and plaintiffs. As one court observed of an association's role in pending litigation: "[T]he interest and expertise of this plaintiff, when exerted on behalf of its directly affected members, assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'" *Harlem Valley Transportation Assn.* v. *Stafford,* 360 F. Supp. 1057, 1065 (SDNY 1973), quoting *Baker* v. *Carr,* 369 U. S. 186, 204 (1962).

In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." *Joint Anti-Fascist Refugee Committee* v. *McGrath*, 341 U. S. 123, 187 (1951) (Jackson, J., concurring); see *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 459 (1958) (association "is but the medium through which its individual members seek to make more effective the expression of their views"). The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.

We are not prepared to dismiss out of hand the Secretary's concern that associations allowed to proceed under *Hunt* will not always be able to represent adequately the interests of all their injured members. Should an association be deficient in this regard, a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles. And were we presented with evidence that such a problem existed either here or in cases of this type, we would have to consider how it might be alleviated. However, the Secretary has given us absolutely no reason to doubt the ability of the UAW to proceed here on behalf of its aggrieved members, and his presentation has fallen far short of meeting the heavy burden of persuading us to abandon settled principles of associational standing. See *Vasquez* v. *Hillery*, 474 U. S. 254, 265–266 (1986). We therefore reaffirm the principles we set out in *Hunt*, and hold that the UAW has standing to litigate this action.

## IV

Our conclusion that the UAW has standing would be of little consequence if we agreed with the Court of Appeals

that "the complaint should be dismissed because it was filed without the joinder of necessary parties," namely, the cooperating state agencies whose adverse benefit determinations gave rise to the injuries complained of here. 241 U. S. App. D. C., at 110, 746 F. 2d, at 843. Because petitioners appear to have conceded that the state agencies are outside the jurisdiction of the District Court, Brief for Petitioners 44, n. 44, a demand that all the agencies involved be named as defendants would bar the UAW from proceeding any further with this action. However, we believe that the Court of Appeals' resolution of the joinder issue was erroneous.

In part, the Court of Appeals' decision was based upon its reading 19 U. S. C. § 2311(d) to require that the state procedural rules applicable to the review of individual entitlement determinations be applied in this case. Since, under state law, review of an individual TRA claimant's eligibility determination cannot be had without the joinder of the state agency that made that determination, the Court of Appeals reasoned that a plaintiff could not pursue the claims raised here unless he joined as defendant the state agency whose reliance on the 1975 handbook had allegedly denied him TRA benefits. As should be clear from the foregoing discussion of the standing issue, however, the court's application of § 2311(d) was founded on a mischaracterization of this lawsuit. This action is not an appeal from an adverse benefit determination, removed to federal court. It is a challenge to the federal guidelines that required those determinations. And just as § 2311(d) cannot be read to bar federal jurisdiction over a challenge to the Secretary's statutory interpretation, so § 2311(d) does not demand that the state rules governing review of agency entitlement decisions bind the federal court entertaining that challenge.

The second basis of the Court of Appeals' decision was its concern that without the joinder of every state agency whose cooperation was needed to effect the relief granted by the District Court against the Secretary, such relief might "be a futile thing except to the extent that voluntary compliance

[by those agencies] with the request of the Secretary may be expected." 241 U. S. App. D. C., at 111, 746 F. 2d, at 844. We do not share this fear. If upon reaching the merits of this case, the Court of Appeals upholds the relief ordered by the District Court, we have little doubt that the state agencies, which have agreed to administer TRA benefits as "agent[s] of the United States," 19 U. S. C. §§ 2311(a), 2313(a), would obey the Secretary's directive to process anew any TRA claims wrongfully denied as a result of the 1975 handbook's interpretation of the Trade Act.

Regulations promulgated by the Secretary provide that "[i]n making determinations, redeterminations, and in connection with proceedings for review thereof," a cooperating state agency "shall be an agent of the United States and shall carry out fully the purpose stated in § 91.2." 29 CFR § 91.51(d) (1985). Among the goals set out in § 91.2 of those regulations is "to implement the provisions of the Act uniformly and effectively throughout the United States." State agencies that have entered into agreements with the Secretary would thus be bound to comply with the relief ordered here. Were a state agency to balk at engaging in the reprocessing the Secretary would order pursuant to the court's injunction, it could be found in breach of its agreement. 29 CFR § 91.63(e) (1985). Such a finding would cause employers in that agency's State to lose certain tax credits against their liability for the Federal Unemployment Tax. 26 U. S. C. § 3302(c)(3). In any event, since state agencies are fully reimbursed by the Federal Government for the TRA benefits they pay and for the administrative costs of processing those payments, it seems unlikely that a directive from the Secretary would meet any resistance from his agents.

Under these circumstances, we do not believe that the state agencies should be considered "indispensable parties" within the meaning of Federal Rule of Civil Procedure 19(b), whose absence from this action rendered the District Court unable to grant in full the relief sought by petitioners. Fur-

thermore, given that the only prejudice to absent third parties suggested here is administrative work for which the agencies will be fully reimbursed, it would be indeed odd were we to prevent this suit from going forward simply because there is a slight chance that petitioners will not be able to obtain the full extent of the relief they seek.

## V

We hold that the UAW has standing to proceed in this case, and that petitioners' failure to join the various cooperating state agencies poses no obstacle to the suit. It remains for the Court of Appeals to consider the merits of the District Court's decision and any procedural issues properly preserved and raised.

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, dissenting.

I disagree with the Court's conclusion that the District Court properly exercised jurisdiction over this case.

Section 239(d) of the Trade Act of 1974, 19 U. S. C. § 2311(d), provides that "[a] determination by a cooperating State agency with respect to entitlement to program benefits . . . is subject to review in the same manner and to the same extent as determinations under the applicable State law [regarding unemployment compensation benefits] and only in that manner and to that extent." The legislative history explains that "[t]he bill would have the effect of channeling all questions arising from determinations by State agencies through the normal State review procedure." S. Rep. No. 93–1298, p. 139 (1974). Congress thus expressed the intent that once a claim for trade readjustment allowance (TRA) benefits is submitted to a cooperating state agency, the agency and state courts shall have exclusive jurisdiction

to determine *all* questions, legal as well as factual, regarding the claim.

The Court treats § 239(d) as inapplicable to the present case on the ground that petitioners have not requested federal-court review of any particular benefit determination under the relevant federal guideline, but instead challenge the guideline itself. *Ante,* at 285. The distinction between a challenge to the guideline and a challenge to benefit determinations might be meaningful if petitioners had only challenged the application of the guideline to as-yet-unsubmitted claims, but that is not this case. At the time the District Court entered its judgment, the guideline at issue had been superseded for nearly 22 months, and the only live controversy related to the cooperating state agencies' applications of the guideline to already-submitted claims.[1] Thus, this suit is precluded by Congress' clearly expressed intent to commit to the state review process the adjudication of all questions regarding TRA benefit claims under submission to a state agency.

In explaining its holding that § 239(d) does not apply to this case, the Court states that "although review of individual eligibility determinations in certain benefit programs may be confined by state and federal law to state administrative and judicial processes, claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court." *Ibid.* If the Court means that this case could have been brought even if the underlying benefit claims were state unemployment compensation claims, I disagree. In such a case, petitioners'

---

[1] The claims in this case related to weeks of unemployment beginning prior to October 1, 1981. Brief for Petitioners 4, n. 4. When the District Court entered its judgment on July 28, 1983, the relief granted related only to already-accrued claims for periods 22 months past or older. The record does not indicate that any unadjudicated claims for the period preceding October 1, 1981, remained outstanding at the time the District Court's opinion issued.

suit, which seeks declaratory and injunctive relief for the sole purpose of providing a predicate for the recovery of already-accrued benefit claims in state court, would have been barred by the Eleventh Amendment. *Green* v. *Mansour*, 474 U. S. 64 (1985).[2] Of course, the Eleventh Amendment does not directly apply in the present case, since TRA benefits are paid entirely from federal funds, but what § 239(d) commands a federal court to do is treat questions arising from TRA benefit determinations *as if* they were questions arising from benefit determinations under state unemployment compensation law. Under that standard, this is not a case that should be adjudicated by the federal courts.[3] Accordingly, I dissent from the Court's decision to address petitioners' claims on the merits.

---

[2] The cases cited by the Court that involve claims for state unemployment compensation benefits — *Ohio Bureau of Employment Services* v. *Hodory*, 431 U. S. 471 (1977), *Fusari* v. *Steinberg*, 419 U. S. 379 (1975), and *California Dept. of Human Resources Development* v. *Java*, 402 U. S. 121 (1971) — are not to the contrary. These cases concern requests for declarations or injunctions that pertain at least in part to future claims for benefits, see, *e. g.*, *Hodory, supra*, at 475, which is not true of petitioners' suit as of the time the District Court issued its judgment, see n. 1, *supra*. Also, whether or not the Eleventh Amendment might have been a bar to any aspect of the relief sought in *Hodory, Fusari*, or *Java*, the defendant state agency failed to raise the issue.

[3] *Christian* v. *New York Dept. of Labor*, 414 U. S. 614 (1974), is not sound support for the Court's conclusion that the present case is properly in federal court. In *Christian*, the Court never directly considered the jurisdictional implications of 5 U. S. C. § 8502, the analogue of § 239(d) in this case. The only jurisdictional question the Court squarely addressed was whether mandamus jurisdiction lay against the Secretary of Labor, and the Secretary in fact conceded that such jurisdiction was proper. *Id.*, at 617, n. 3. Arguably, any bar to federal-court adjudication presented by the jurisdictional statute in *Christian* is, like an Eleventh Amendment bar, waivable by the defendant. In any event, the Court's failure to squarely consider the jurisdictional question in *Christian* makes it inappropriate to rely on that case for guidance in determining the jurisdictional question here.

JUSTICE POWELL, dissenting.

The Court today holds that petitioner UAW has standing to proceed in a suit challenging the Secretary of Labor's interpretation of the eligibility provisions of the Trade Act, codified at 19 U. S. C. § 2291, because those members of the UAW who have claims pending before a state administrative agency would have standing to bring a similar suit. The record, however, provides no information as to how many members of the UAW fall within this potential class. There is the danger that ultimately the number of members that the UAW can represent will be quite small. The Union may therefore lack the incentive to provide the adequate representation needed by the courts.

It is well settled that an association can represent its members' interest in a third-party action when an association has alleged a related injury. *E. g.*, *Warth* v. *Seldin*, 422 U. S. 490 (1975). Moreover, in appropriate circumstances this Court has conferred standing upon an association whose members have suffered an alleged injury, even though the organization itself has not suffered an injury. In *Hunt* v. *Washington State Apple Advertising Comm'n*, 432 U. S. 333 (1977), the Court stated:

> "[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.*, at 343.

It is undisputed that achieving unemployment benefits under the program of trade readjustment allowance is "germane" to the UAW's purpose in the sense that one of its goals is to secure such benefits for its workers. I do not believe, however, that a determination of "germane" in this formalis-

tic sense should be sufficient to confer standing upon the UAW here.

A consistent concern of our standing cases has been the adequacy of representation of the organization purportedly acting on behalf of the injured parties, especially when the organization itself has not suffered injury. This Court has repeatedly expressed its reluctance to confer standing on third parties for fear of inadequate representation. "The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them." *Singleton* v. *Wulff*, 428 U. S. 106, 114 (1976) (opinion of BLACKMUN, J.). See, *e. g.*, *Baker* v. *Carr*, 369 U. S. 186, 204 (1962) (standing requirement aimed at "assur[ing] that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends"); *Holden* v. *Hardy*, 169 U. S. 366, 397 (1898) (assertion of third parties' rights would come with "greater cogency" from the third parties themselves).

Since the concept of organizational representation is based on a theoretical identity between the organization and its members, the organization's interest in the outcome is based on the members' stake in the outcome. The number of members in the organization with a concrete stake in the outcome, however, may be so small that this theoretical identity disappears. It may develop in this case, in fact, that the great majority of members in the Union have little or no interest in the litigation. Moreover, a union may have reasons for instituting a suit—such as the publicity that attends a major case—other than to assert rights of its members. In such a case, the "concrete adverseness" required throughout a litigation by our cases may be absent.*

---

*It is, of course, true that many organizations have financial resources, expertise, and research ability that individual plaintiffs or ad hoc groups lack. But absent the requisite interest of the organization itself, the presence of these resources does not ensure adequacy of representation. It also may be noted that organizational standing differs in controlling

In the light of these dangers of inadequate representation, I would not find—on the basis of the record before us—that the UAW had standing based on an amorphous and unenumerated group of injured parties. Accordingly, I dissent.

---

respects from the typical class action. In the latter, there must be an identity of interests among all plaintiffs before the court—an identity that can be counted upon to assure adequate representation.