**LONG ISLAND BOARD OF REALTORS, INC.,**
Plaintiff,

v.

**INCORPORATED VILLAGE OF MASSAPEQUA PARK,**
Defendant.

No. 96 CV 5241.

United States District Court, E.D. New York.

Feb. 2, 2001.

Goldson & Radin (Howard W. Goldson, of counsel), Commack, NY, for plaintiff.

Leff, Leff & Leff, LLP (Robert M. Leff, of counsel), Massapequa Park, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, Long Island Board of Realtors ("the Board") is a not-for-profit corporation representing real estate licensees. The Board brought this action on October 25, 1996 against the Incorporated Village of Massapequa Park ("Village"), seeking a declaratory judgment that Local Law No. 5 Section 286, a 1997 municipal ordinance of the Village regulating the display of signs in residential districts in the Village is an unconstitutional restraint on speech. The Board also seeks an injunction prohibiting the Village from enforcing the ordinance.

### I

On or about January 7, 1991, the Village enacted municipal ordinance § 286–1 *et seq.* of the Village of Massapequa Park Code regulating the posting of signs in the Village. Article I, "General Provisions" § 286–8(B) stated, "Advertising or commercial signs are prohibited on residential property."

Article II, "Residential Property; Enforcement" contained § 286–19 stating, "Any form or nature of advertising or commercial signs is prohibited on residential property within the Incorporated Village of Massapequa Part except those professional signs which are specifically enumerated in § 286–10 of Article I." Professional signs enumerated in § 286–10 were "the signs of doctors, lawyers, accountants, engineers and brokers and any major profession duly licensed by the State of New York only." Further, § 286–20 of Article II required "the express written prior permission from the Board of Trustees" of the Village in order to post any sign on residential property.

The Village amended the Code on February 3, 1997, by enacting Local Law # 5, repealing § 286 and replacing it with a new § 286. The new § 286 states its purpose in § 286–1 as follows:

Section 286–1. Legislative Intent. The purpose of this Local Law is to regulate existing and proposed signs in order to:

(1) Preserve the aesthetic value of the property in the Incorporated Village of Massapequa Park.

(2) Enhance and protect the physical appearance and environment of Incorporated Village of Massapequa Park.

(3) Preserve the scenic and natural beauty of the Incorporated Village of Massapequa Park.

(4) Provide for a more enjoyable and pleasing community.

(5) Reduce sign and advertising distractions and obstructions that may contribute to traffic, congestion and/or accidents.

(6) Reduce hazards that may be caused by signs overhanging or projecting over public rights-of-way.

(7) Reduce hazards to bicyclists and pedestrians that may be caused from signs being placed on or around sidewalks or streets.

The new ordinance no longer prohibits all advertising on residential property. But § 286–12 provides that "[n]o off-site commercial advertisements are permitted on residential property." A permit is required by § 286–4(A) for any sign posted within residential districts, and § 286–4(B) limits such permits to no more than one at a time for a single parcel of property. An exception in § 286–12 provides that in addition to the one permitted sign, "identification signs" may be attached to or posted within three feet from the building. Identification signs are described in § 286–12(B) as

> showing the name and address of the occupants of the premises or professional signs which shall include the signs of doctors, dentists, lawyers, accountants, chiropractors and engineers duly licensed by the State of New York only occupying the premises which shall not exceed six (6″) inches in height and eighteen (18″) inches in length on a pole no higher than forty eight (48″) inches in height. The top of the sign shall not extend beyond the top of the pole, which pole shall not be any higher than four (4′) feet from the ground.

Sections 286–7 and 286–12(C) provide that signs posted on residential property, other than identification signs, must be no larger than fifteen inches in height and fifteen inches in length.

Until its repeal on June 14, 1999, § 286–4(D) provided:

The Building Department shall require that any real estate sign in a residential district contain only the words "FOR SALE" and, at the option of the applicant, the word [sic] "BY OWNER" or "BY BROKER" and a telephone number as off-site commercial advertisements are prohibited in residential districts as set forth in Article II of this Chapter.

The Village repealed this section by enacting Local Law No. 8 of 1999, which deleted § 286–4(D) but left the ordinance otherwise intact.

The Board filed an amended complaint on October 31, 1997, after the enactment of the new Section 286, but prior to the repeal of Section 286–4(D). The amended complaint changed little from the original complaint other than to rearrange paragraphs and replace the reference "The Sign Ordinance" with "The Prior Sign Ordinance." The complaint has not been amended since the repeal of § 286–4(D).

The Board now moves for summary judgment declaring "Sections 286–1 through 286–19 of the Code of the Incorporated Village of Massapequa Park unconstitutional." Defendant cross-moves for summary judgment declaring Section 286 content neutral and constitutional on its face.

## II

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The substantive law governing the case will determine those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

In assessing the record, "the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Moreover, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material issue genuinely in dispute." *Patrick v. LeFevre,* 745 F.2d 153, 161 (2d Cir.1984). Once the moving party has satisfied its burden, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

In order to defeat a summary judgment motion, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

To aid the Court in determining whether summary judgment is warranted, Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York provides that both the motion papers and the papers in opposition to the motion be accompanied by "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

In this case, neither the plaintiff, nor the cross-moving defendant filed such a Rule 56.1 statement. Moreover, the amended complaint, like the original complaint, alleges the unconstitutionality only of Sections § 286–4(B), (C) and (D) (now repealed), § 286–5(A)–4, § 286–8(A) and § 286–12(C) and (D). Aside from its procedural flaws, The Board's summary judgment motion provides no basis to question the constitutionality of the other provisions of Sections 286–1 through 286–19.

A review of the record in this case gives the court no confidence that requiring further submissions will clarify the issues, and therefore the court construes this motion as applying only to those provisions of the ordinance complained of in the amended complaint of October 31, 1997.

### III

As a threshold matter, the Village contends that The Board lacks standing to bring its first amendment claim because it has not shown an actual injury suffered by an individual homeowner, realtor, or third party that satisfies the standing requirements of *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

But The Board may challenge the ordinance solely as the representative of its member realtors. See *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) and *United Automobile Workers v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). The Board is alleging that its members are suffering the immediate and threatened injury of a deprivation of their constitutional right to free commercial speech as a direct consequence of the ordinance. Any one of its members would have standing to bring an action on the same basis, and yet the individual participation of any one of the members is not

required to show that the ordinance is unconstitutional or to achieve the relief sought that the ordinance be declared unconstitutional and enjoined from enforcement. See *Warth,* 422 U.S. at 511, 95 S.Ct. 2197; *Brock,* 477 U.S. at 282, 106 S.Ct. 2523.

■ The Board argues that the ordinance does not satisfy the four-part test set forth by the United States Supreme Court in *Central Hudson Gas and Electric Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) for determining whether a statutory restriction on commercial speech is constitutionally permissible. The four elements of the test are 1) whether the speech at issue concerns lawful activity and is not misleading; 2) whether the asserted governmental interest to be served by the restriction is substantial; 3) if both inquiries yield affirmative answers, whether the regulation directly advances the governmental interest asserted, and 4) whether it is no more extensive than is necessary to serve that interest. *Id.* at 566, 100 S.Ct. 2343.

The Village concedes that the Board's real estate signs are legal and not misleading. The Board concedes that the purpose of the ordinance outlined in § 286–1 promotes village aesthetics and safety, a substantial government interest. The remaining inquiry is therefore whether the ordinance directly advances its stated purpose without restricting more speech than is necessary.

■ Local governments are constitutionally permitted to impose size, height and location restrictions on commercial signs for the advancement of aesthetic and safety interests. *Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 508–510, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). They are also permitted to apply restrictions to off-site commercial advertising different from those applied to other forms of advertising. *Id.* at 511–12, 101 S.Ct. 2882.

■ The Court rejects the Board's claims that the ordinance is rendered underinclusive by § 286(4)(C) requiring that only signs on residential property be placed no further than three feet from the building line, and by § 286–12(D) prohibiting off-site commercial advertisements on residential property, although there is no similar restriction on onsite commercial advertisement.

The Board's objections to § 286–5(A)(4), requiring the submission of a picture or drawing of the sign with any application for a permit, and to § 286–8(A), requiring the removal of signs within 24 hours after the transfer of title or possession of property, are unsupported by any argument or principle of law, and are rejected. Both provisions are reasonable requirements to aid the Village in enforcing the permissible restrictions in the ordinance.

■ Section 286–4(B) and § 286–12(C) limit to one the number of permitted signs allowed on residential property other than identification signs allowed in § 286–12(B). The Board contends that this restriction renders the ordinance over-inclusive, as it has the effect of limiting non-commercial as well as commercial speech. The Board's argument is that the display of one permitted sign necessarily prevents the simultaneous display of another permitted sign and its message, which may not constitute commercial speech.

■ This restriction is one of time and place rather than an overbroad preclusion of speech. The ordinance does not totally preclude the expression, but rather prohibits the placement of two permitted signs simultaneously. The effect is that the property owner must choose which sign to display at a given time, and is not precluded from expressing any simultaneous messages in other fora. Such a time restriction must be examined under the three-part time, place and manner analysis of *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) and *Virginia Pharmacy Board v. Virginia*

*Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). *Ward* holds that in order to pass constitutional muster, a regulation must 1) be content neutral on its face, 2) be narrowly tailored to serve a significant government interest, and 3) leave open sufficient alternative channels of communication for the restricted information.

The Village ordinance passes the *Ward* test. It is content neutral since the repeal of former § 286–4(D) dictating language allowed on real estate signs. The ordinance serves the substantial government interests of aesthetics and safety by controlling the number, location, size and height of signs permitted to be posted on residential property, without completely prohibiting such signs, or precluding signs which merely identify the street number or occupant of the property. It allows sufficient alternative means of communication of the restricted information in the numerous other ways that real estate brokers customarily employ to advertise property, such as newspaper, television and radio advertising, internet websites, direct mail, and listings of properties posted in real estate offices.

Furthermore, the ordinance does not preclude signs, it merely defines their form and the time during which they may be posted, which includes infinitely renewable 60–day periods per § 286–4(E), not simultaneous with the display of any other such sign on the same property. The Board's members are able to post signs on the residential property they hope to sell, as long as those signs comply with the ordinance, which is content neutral on its face and does not excessively restrict such communication.

█ The Board also alleges that the ordinance is applied in an impermissibly content-specific manner, contending that the ordinance is applied only to real estate signs. The ordinance defines "Signs" in § 282–2 as follows:

SIGN OR SIGN [sic]—Any material including paper, cloth, wood, aluminum, plastic and canvas; structure, or device for visual communication composed of lettered or pictorial matter or upon which lettered or pictorial matter is placed, which is used outside of, or on the exterior of any building, structure or vehicle for display of an advertisement, announcement, notice, banner, logo, flag, directional matter or name, and includes but is not limited to signs, billboards, sign boards, illuminated signs, neon tube or ground signs, but does not include signs erected and maintained pursuant to and in the discharge of any governmental function.

The Board provides as evidence 38 photographs of security company signs, decorative flags, house numbers, newspaper boxes, and bumper stickers on vehicles parked on residential property. These signs are presumably displayed without benefit of a permit, though plaintiff fails so to allege. Some of the examples photographed may not even fall within the subject matter of the permit provision of the ordinance, such as the number symbols attached over the doorway of a house identifying its street number, or the rear of a parked vehicle bearing the attached manufacturer's logo, "TOYOTA." But other examples, such as the security company signs and the newspaper boxes advertising the name "Newsday," cannot be lightly dismissed.

As further evidence that the ordinance is selectively applied, The Board offers the deposition testimony of Village Building Inspector William Howe, responsible for the implementation and enforcement of the ordinance. He testified that he believed that the permit renewal requirement in § 286–4(E) applied only to real estate signs.

George Sheppard, one of two people employed in the Village's "Residential Services Department, stated that permits are only issued for real estate signs, and that the town has 'laws to cover the real estate signs,'" and the ordinance "does not en-

compass all signs." He also testified that flags such as the decorative "Welcome" flags posted on homes and pictured in plaintiff's exhibit photographs "are not signs as such in my definition of what a sign would be."

In addition, the Board presents the Village's "Application for Sign Permit—Residential Property," which appears to be designed specifically and only for real estate signs. Immediately below the spaces provided for the applicant's name, address and property identification numbers appears the following:

"Type of Sign:

FOR SALE BY OWNER( ) or FOR SALE BY BROKER ( )

please check one

FOR RENT BY OWNER( ) or FOR RENT BY BROKER ( )"

No space is provided in which the applicant might specify any other type of sign.

The Village has not responded to this evidence in any form. Viewed in the light most favorable to the party opposing the motion, *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (1986), the court is not prepared to decided as a matter of law on the evidence before it whether the ordinance is unconstitutionally applied.

The Board's photographs do not show that no permit was issued for any of the signs pictured. Indeed, as noted, several may not come within the purview of the permit requirement at all.

The testimony of Howe and Sheppard does not show that their individual interpretations of the relevant application of the ordinance comports with or is the result of Village policy regarding its enforcement. Moreover, the Board has not shown that any of its members have suffered any particular injury even if in fact the Village has failed to enforce the ordinance in certain instances. The Court declines to enjoin the enforcement of the ordinance on the record presented.

Therefore, the Village's cross-motion for summary judgment is granted. The Board's motion for summary judgment is denied, and the complaint dismissed.

So ordered.