ROSENN, Circuit Judge,
Concurring and Dissenting.
I concur and join in the majority’s opinion except Part ÍII.A (The Trade Act Does *98 Not Bar Relief Against DOL). However, I cannot agree that the plaintiffs are entitled to an injunction against the United States Department of Labor (DOL). The fundament of plaintiffs’ complaint against the DOL is that it “authorized and/or acquiesced in Pennsylvania’s policies of requiring waivers of transportation subsidies by the applicants under the Trade Adjustment Assistance (TAA) Program and in setting a travel subsidy cap.” However, there is no evidence of record supporting this general allegation asserted “[u]pon information and belief.”[7] The majority points to none.
“An injunction is an extraordinary remedy, which should be granted only in limited circumstances.” Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3d Cir.2002) (internal quotation marks omitted). Not only must the right to an injunction be clear, but also it must be supported by an adequate factual record. Furthermore, where the DOL has agreed with the plaintiffs that Pennsylvania’s previous travel reimbursement policy was invalid and the state agency has revised its policy, the plaintiffs have not shown that they lack adequate remedy in state proceedings for reimbursement of previously wrongfully reduced or waived travel allowances. “No court of equity [should] ... allow its injunction to issue [unless the petitioner] has no adequate remedy by the ordinary processes of the law.” Utah Power & Light Co. v. I.C.C., 747 F.2d 721, 728 (D.C.Cir.1984) (quoting Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Board of Public Works, 172 U.S. 32, 38, 19 S.Ct. 90, 43 L.Ed. 354 (1898)). Because the plaintiffs’ right to this drastic remedy is not supported by any evidence and unwarranted, I respectfully dissent.
I.
At the outset of my dissenting opinion, it is important that I highlight my disagreement with the majority opinion. I do not dispute that there can be a cognizable claim against the DOL if the plaintiffs have submitted any sufficient evidence to show that the DOL’s regulations, guidelines or regulations contravened the Trade Act. The majority acknowledges, however, that the plaintiffs are “not challenging the official statute or regulations.” An examination of the complaint confirms this conclusion. Apart from the one-sentence assertion asserted “[u]pon information and belief,” the remainder of the complaint directed at the DOL consists of mere legal conclusions.
The majority quotes a few sentences from the Supreme Court’s decision in Int’l Union, UAW v. Brock, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). Specifically, the majority quotes the following sentences from Brock: “claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court”; and federal court has jurisdiction to hear a suit “challenging a federal official’s interpretation of a federal statute.” Id. at 285-86, 106 S.Ct. 2523. The majority opinion fails to discuss how the Brock language applies to the plaintiffs’ claims. Instead, it moves simply from the recognition that there can be a cognizable claim against the *99 DOL to its conclusion that there is a federal claim here. The plaintiffs have not challenged any federal official’s interpretation of any Trade Act. provisions in this case. Nor have the plaintiffs challenged federal TAA program.
A plain reading of the plaintiffs’ complaint and briefs shows that they are only challenging Pennsylvania’s previous specific policy, adopted by the Pennsylvania state agency, of limiting travel allowance to $5.00 per day or requiring some of the plaintiffs to sign waivers of travel allowance. They do not challenge the DOL’s general policy that states should set reasonable limit to TAA training cost, inehkb ing travel cost, as required by federal regulations. Federal regulations require that TAA training be, among other things, at a reasonable cost. 20 C.F.R. 617.22(a)(6). Furthermore, federal regulations provides that approval of TAA training be at “the lowest reasonable cost.” 20 C.F.R. 617.22(b). See generally DOL’s Training and Employment Guidance Letter (TEGL) No. 5-01 (September 2001). The plaintiffs neither challenge the federal regulations nor TEGL No. 5-01; they merely challenge Pennsylvania’s previous specific policy of capping or requiring waiver of travel allowances.
The plaintiffs, however, have used the term “negotiated” travel policy to refer to Pennsylvania’s specific travel policy; for them, “negotiated” policy is synonymous with the state agency’s specific policy. The defendants themselves have also used the term “negotiated” policy loosely. Even though nomenclature should not be decisive, it can be misleading. It is important, therefore, to set the term and the record straight. The only evidence relied on by the plaintiffs in support of their claims against the DOL and by the majority in support of its conclusion, is the deposition testimony of Ronald Zilonka, - director of the state agency’s TAA program, which I will summarize and discuss more fully below.[8]
Zilonka’s testimony shows that some DOL officials generally promoted the “negotiated” policy of setting “reasonable” limits to travel cost and cited the Pennsylvania’s “negotiated” policy as an example. However, Zilonka denied specifically that the federal officials ever suggested or promoted Pennsylvania’s specific policy and practice of setting per diem limit or requiring waiver of travel reimbursement. He testified specifically- that DOL left the states to devise their specific travel policy and practice. A fair reading' of Zilonka’s deposition testimony shows that the term “negotiated” policy, as used in that deposition, is not synonymous with the specific policy adopted by the Pennsylvania state agency. Zilonka’s testimony has not shown, and there is no evidence otherwise, that DOL officials ever promoted, suggested, or required Pennsylvania to adopt' its specific policy: The context of his testimony shows that thé DOL- officials promoted only the general federal requirement of setting reasonable limits to travel cost'. This requirement not only does not violate the TAA but also conforms to congressional intent and federal regulations.
It must be reiterated that the plaintiffs are not challenging this general federal requirement. They are challenging only the specific travel policy adopted by Pennsylvania. Congress did not enact the TAA to assist only Pennsylvania workers who lost jobs as a result of foreign competition; it was a national program. Thus,' it is a *100 logical assumption that communications relating to policies, guidelines, and their interpretation pertaining to the program would be by letter or written guideline modification of the DOL. That was the DOL’s practice. When it issued its TEGL No. 5-01 in September 2001, the DOL communicated by written letter. The plaintiffs’ complaint refers to another announcement in 1990 by the DOL and it, too, was by general administrative letter, GAL 15-90. The plaintiffs, in this case, however, cannot point to any documentary evidence to support their position against the DOL.
The deposition testimony of Zilonka, cited and relied on by the plaintiffs and the majority, does not show either that the DOL ever promoted or approved, let alone caused, directed or required, the Pennsylvania specific travel policy and practice. In my view, the majority has merely relied on the plaintiffs’ confusing use of the term “negotiated” policy and the Brock language to justify its summary grant of injunction against the DOL. The majority, however, has not addressed the issue of whether the DOL has ever promoted or directed the Pennsylvania state agency to adopt and implement its specific travel policy of setting per diem cap and requiring waiver. Because the plaintiffs’ complaint is merely directed at the specific state policy, and the record shows that the specific policy was devised solely by the state agency, the plaintiffs have failed to show a cognizable claim against the DOL.
II.
Zilonka testified that in 1995 he and representatives of four other states and the District of Columbia had a “conversation” with Russ Kile, a former TAA program administrator at the DOL. Zilonka testified that Kile told the group that “states had the right to negotiate travel costs if that would help lower the cost of training to enable someone to receive the training they want to.” Zilonka testified that he “felt” that Kile had the authority to “make that decision.” There is no evidence of Kile’s authority and its extent. Even if he had unlimited authority, Zilon-ka never testified that Kile informed the state agencies that they had unlimited authority to limit travel costs of participants in the TAA program and obtain waivers. Zilonka further testified that he decided to change the state travel cost policy after discussing with various unnamed individuals within the state agency. He did not recall, however, that he had received any “confirming” memorandum from either Kile or the DOL subsequent to Kile’s alleged “conversation” with the state representatives. Zilonka did not send any “confirming” memorandum to the DOL or Kile.
Zilonka testified additionally that in a National Trade Adjustment Assistance Coordinator’s conference held in Philadelphia in May 1996, federal officials conveyed to all attendees that “negotiated travel policy” was “the best way to lower costs of training” and they cited the Pennsylvania policy as an example. The message he obtained from the speeches by the federal officials, none of whose names he could recall at the time of the deposition, was that the states should look at ways to bring travel costs to a “reasonable” or “comfortable level.” However, Zilonka denied specifically that the federal officials ever “suggested” the practice of setting a $5.00 per diem limit on travel allowances. He did not “recall” either that they ever “recommended” or “suggested” the practice of requiring the “total waiver of travel allowances.” He denied further that the federal officials ever gave him any “parameters” or “guidance” as to how the state should specifically devise its travel cost *101 policy. They left the matter entirely to the states.
Zilonka testified that since the Philadelphia conference, federal officials have never requested any report from him regarding the state’s policy or practice of travel cost reimbursement. Nor was he aware of any verbal or written communications from the DOL regarding the “negotiated” travel reimbursement policy subsequent to the Philadelphia conference. As far as he knew, the Philadelphia conference was the only time that DOL officials discussed travel reimbursement, except possibly for some “informal discussion” with a few federal officials about the state’s travel reimbursement policy or practice. He did not recall that the federal officials ever told him to discontinue the state policy or requested him to submit any report to the DOL regarding the state policy. Any discussion with the federal official was done “informally.”[9]
Zilonka’s recollection of his conversation with Kile shows only that he encouraged states to bring travel costs to a “reasonable” or “comfortable” level. Even if Kile were empowered to do so, there is nothing in Zilonka’s deposition that proves that Kile ever suggested the $5.00 per diem limit or the total waiver of travel allowances. Thus, the plaintiffs have neither alleged nor presented any evidence proving that the DOL’s guidelines, regulation or policies caused, required, or directed the Pennsylvania agency to adopt its specific policy of a per diem cap or waiver of travel allowances.
Despite the confusing and undifferentiated use of the term “negotiated” policy, Zilonka’s testimony does not show that the DOL approved or encouraged Pennsylvania’s specific policy and practice. Nonetheless, even if we assume, arguendo, that the DOL was aware of, or acquiesced in, Pennsylvania’s specific practice, mere awareness or acquiescence, without more, does not constitute a cognizable claim against the DOL under Brock. Neither the plaintiffs nor the majority have cited any authority to support such a proposition.
III.
Finally, the grant of injunctive relief against the DOL is needless because the plaintiffs have not submitted their claim to the state agency since the DOL issued TEGL 5-01. The DOL agreed with the plaintiffs that Pennsylvania’s prior policy and practice was invalid. The DOL has issued TEGL 5-01 to clarify the federal regulations governing travel payments. The plaintiffs have not challenged TEGL 5-01. Furthermore, the plaintiffs have not alleged or shown that they have submitted requests to the state agency for reimbursement of travel allowances the state previously denied them under its original policy. They have not alleged that the state agency has denied any such requests and that the denial is caused by any federal policy, regulation or guideline binding on the state. Under these circumstances, where the plaintiffs have adequate remedies in state proceedings and where there is neither allegation nor evidence that it would be futile for the plaintiffs to seek compensation from the state agency, it is groundless for this court to grant injunc-tive relief against the DOL.
IV.
For the foregoing reasons, I respectfully dissent from the majority’s grant of injunc- *102 tive relief. I would affirm the District Court’s grant of summary judgment in favor of the DOL, not on the ground of mootness relied on by that court, but for the reasons set forth above. Dillinger v. Caterpillar, Inc., 959 F.2d 430, 449 n.2 (3d Cir.1992) (“[T]he general rule that a district court decision may be affirmed on an alternative ground is well established.”).

. In paragraph 80 of their complaint, the plaintiffs assert a legal conclusion against the DOL: DOL violated the case-by-case determination policy of the Trade Act and acted beyond its authority under the Trade Act "[i]f by [its GAL 15-90] it required Pennsylvania to set a statewide total-cost-of-training limit.” (Emphasis added). Significantly, the plaintiffs qualify their assertion with the word "if." Subsequent discovery has yielded no evidence to support this supposition.

. Significantly, the plaintiffs have offered no deposition testimony of any federal officials in charge of the TAA program.

. Significantly, the plaintiffs have offered no deposition testimony of any federal officials or officials from other state agencies who attended the Philadelphia conference to support their claims.