## The ASSOCIATED GENERAL CONTRACTORS OF CONNECTICUT, INC.

v.

## CITY OF NEW HAVEN.

### Civ. No. N–89–303(PCD).

United States District Court,
D. Connecticut.

March 10, 1990.

Michael N. LaVelle, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiff.

Clinton Wright and Carolyn W. Kone, Deputy Corporation Counsel, New Haven, Conn., for defendant.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

Plaintiff, The Associated General Contractors of Connecticut, Inc. ("AGC"), is a non-profit association of general construction contractors, subcontractors and suppliers. AGC challenges the facial constitutionality of Chapter 12½, New Haven Mu-

nicipal Code, an Equal Opportunities Ordinance. This ordinance sets aside a percentage of public works contracts for minority and women-owned firms. Section 12½–25(a) provides:

> Construction contracts in excess of one hundred thousand dollars ($100,000.00) will utilize minority owned firms to a dollar percentage of not less than fifteen (15) percent or one-half (½) the percentage of the minority population and women owned firms to a dollar percentage of not less than six (6) percent or one-quarter (¼) the percentage of the population of women of the City of New Haven, where such firms are available for work. In no event shall a contractor qualify for both set-asides.

AGC argues that this set-aside violates the equal protection clause of the fourteenth amendment under the strict scrutiny analysis set forth in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). AGC contends that the City has not made the necessary predicate factual findings to justify the set-aside as necessary to remedy the effects of past discrimination against minorities and women in the construction field and that the ordinance is not narrowly tailored to accomplish its goals.

## I. *Defendant's Motion to Dismiss*

Defendant moves to dismiss on the basis that AGC lacks standing to prosecute this constitutional challenge both in its own right and in representation of its members.[1] An association may have standing in such representation, even absent injury to itself. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). To do so, an association must allege that (1) one or more of its members would have standing; (2) the interests it seeks to protect are germane to its purposes; and (3) neither the claim nor the relief requested requires participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); see *International Union, United Automobile Workers of America v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). An association can "draw upon a pre-existing reservoir of expertise and capital" to vindicate its members' interests and "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Id.* at 289–90, 106 S.Ct. at 2532–33.

Defendant contends that AGC has not pleaded that its members have suffered any cognizable injury. Further, defendant argues that this litigation seeks to vindicate the rights of white male owned members to the detriment of its. women and minority owned members, and is thus not germane to AGC's purpose but constitutes a conflict of interest that mandates participation of AGC's individual members.

### A.

The first inquiry is whether plaintiff's members would have standing to sue in their own right. "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211. AGC alleges that a substantial number of its members have been and continue to be deprived of the opportunity to bid on and compete for that portion of public works contracts set aside for minority and women owned firms. Complaint, ¶¶ 2, 14. Defendant asserts that AGC has not specifically identified any current project which the ordinance has been or will be applied to or any failed attempt by its white male members to ob-

---

1. Where standing is challenged largely on the pleadings, the court must "'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.'" *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979), quoting *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206. However, discovery materials submitted by the parties in support of their respective positions may be considered. *See Strykers Bay Neighborhood Council v. City of New York*, 695 F.Supp. 1531, 1542 (S.D.N.Y.1988).

tain work that was set aside for minority or women owned enterprises.

The work or materials which are to be set aside for certified minority or women owned firms is determined by the general contractor. Affidavit of Wilson, ¶ 8. Each bidding general contractor must designate the work to be performed by minority and women owned firms to satisfy the set aside. Mazza Deposition at 569–70. General contractors are not required to list the firms that will be used to satisfy the set-aside when the bid is submitted. Second Affidavit of Wilson, ¶ 4. At a pre-award conference, the contract compliance director determines whether or not the bidder has complied with the set-aside requirement. New Haven Code, Equal Opportunities Ordinance § 12½–27. Before the bid is awarded, the general contractor must disclose the firms to be used to satisfy the set-aside. Second Affidavit of Wilson, ¶ 4.

Defendant argues that AGC can show no injury to its members because any increased costs to a general contractor from the set aside can be passed on to the City. Mazza Deposition at 512–13. AGC, however, asserts injury to "those subcontracting firms owned by white males [which] are not considered by general contractors for the set-aside portions of a public works contract because, as white-male owned, they are simply not eligible for such work by the terms of the Ordinance." Supplemental Memorandum in Opposition at 3.[2] AGC contends that all white male owned members are ineligible for set-aside work, do not get that percentage of contracts, and do not bid for or otherwise seek such work. The denial of the opportunity to compete for such work constitutes the requisite "injury in fact."

In order to have standing, a party must allege three elements: (1) that he has personally suffered some actual of threatened injury; (2) fairly traceable to the allegedly unconstitutional ordinance; and (3) likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). AGC can establish standing by "alleg[ing] that its members, or any one of them are suffering immediate or threatened injury." *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211; *see also American Ins. Ass'n v. Selby*, 624 F.Supp. 267, 270 (D.D.C.1985) ("Defendants ... can cite no case in which a federal court has denied standing to an association simply because too few of the association's constituent members have suffered injury in fact.").

Taking AGC's allegations to be true, *see United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973), the set-aside ordinance deprives AGC's white male subcontractor and supplier members of the opportunity to compete for a percentage of the contracts awarded by defendant. Such deprivation constitutes an injury in fact and vests those AGC members with standing to sue in their own right. *Cf. National Coal Ass'n v. Hodel*, 617 F.Supp. 584, 588 (D.D.C.1985), *aff'd*, 825 F.2d 523 (D.C.Cir.1987) (association's allegations of present and future economic injury from Secretary of Interior's withdrawal of federal coal lands from the competitive leasing system are sufficiently concrete to satisfy the injury in fact requirement).

Defendant relies on AGC's failure to point to a specific project where a member's bid has been rejected based on the set-aside ordinance. Because each bidding general contractor is required to set forth the work which will performed by certified women and minority owned firms before the bid is awarded, there is no opportunity to bid for that specific work. Thus since a white male owned firm is ineligible and not considered for set-aside work, there is no

---

2. On October 17, 1989, plaintiff filed an amended complaint which adds Drywall Associates, Inc. as a co-plaintiff. Drywall, a subcontractor member of AGC, alleges that it submitted the lowest bid on a project subject to defendant's set-aside requirement and that the general contractor rejected this bid in favor of a higher bid from a minority-owned firm under instructions from defendant. At a scheduling conference held on October 24, 1989, this court ordered that the amended complaint be held in abeyance until the issue of AGC's standing is resolved. Thus defendant objects to any consideration of these allegations until the issue at bar is decided and it has the opportunity to take appropriate discovery.

turn down of such a firm. But for the allegedly unconstitutional set-aside ordinance, noncertified firms would be able to compete for all subcontracting and supplier jobs on projects covered by the ordinance rather than a specified percentage. *See DKT Memorial Fund Ltd. v. Agency for Int'l Development,* 691 F.Supp. 394, 397–98 (D.D.C.1988), *aff'd in part and rev'd in part,* 887 F.2d 275 (D.C.Cir.1989) (recognizing that nonapplicants, who are otherwise qualified, may have standing to challenge a disqualifying statute or regulation).

Defendant cites an unpublished Fourth Circuit decision, *Carpenter v. Barnhart,* No. 88–3578 (4th Cir. Jan. 16, 1990) [894 F.2d 401 (Table)]. There, a non-minority contract bidder was held to lack standing to challenge a set-aside scheme based on no "more than an assertion of hypothetical loss of business." Slip Op. at 9. Defendant asserts that that court thus rejected the argument that the loss of an opportunity to bid on a percentage of contracts conferred standing.

Defendant, however, misreads the holding in *Carpenter.* There it was shown that plaintiff had not regularly bid on the projects in issue during the relevant period and also that plaintiff had stopped bidding to avoid competition with his wife's firm, which qualified as a "disadvantaged business enterprise" under the set-aside scheme, and to whom plaintiff was renting equipment. Plaintiff was held to have failed to establish a cognizable injury "in light of [his] failure to submit bids" and that he indirectly benefitted from the scheme he sought to challenge. Slip Op. at 9. The court was careful to note that it did "not suggest that a non-minority contract bidder situated similarly to [plaintiff] can never allege cognizable injury from a set-aside scheme." *Id. Carpenter* is factually distinct from this case and does not warrant dismissal of the complaint. AGC has alleged that its members bid under the scheme in issue and are thus precluded from being considered for 21% of the subcontracts awarded. The denial of the opportunity to compete for all the subcontracts awarded is sufficient to constitute an injury in fact to one or more of AGC's members.

## B.

Defendant also claims that this suit is not germane to AGC's purposes. This prong of the *Hunt* test only requires "that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together." *Humane Society of the United States v. Hodel,* 840 F.2d 45, 56 (D.C.Cir. 1988). The term "germane" as used in *Hunt* has been construed to mean "pertinence or connection" rather than "central." *Id.* at 56–57; *National Constructors Ass'n v. National Electrical Contractors Ass'n,* 498 F.Supp. 510, 521 (D.Md.1980) (germaneness requires suit to be "pertinent or relevant to [group's] stated purposes"). This requirement "prevent[s] litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care." *Hodel,* 840 F.2d at 57; *see also Mountain States Legal Foundation v. Dole,* 655 F.Supp. 1424, 1429 (D.Utah 1987). "It ensures a modicum of concrete adverseness by reconciling membership concerns and litigation topics by preventing associations from being merely law firms with standing." *Id.* at 58; *see also McKinney v. United States Department of Treasury,* 799 F.2d 1544 (D.C.Cir. 1986) (general protection of economic interests of producers and workers not germane to purposes of nonprofit public interest law firm).

Defendant contends that the civil rights of AGC's white male members is not germane to its organizational purposes. AGC alleges that it exists, among other purposes, to foster, promote and protect common interests of its member contractors and subcontractors. Complaint, ¶ 1. AGC's by-laws provide that "[a] primary objective of the Association is to promote fair and honest business dealings with the owners of construction projects, and ... with all segments of the construction industry." Defendant's Exhibit 4. Defendant argues that against that bylaw, AGC's

reliance on fairness to its members as warranting the suit, construes fairness too broadly for the germaneness test and assumes a favorable litigation outcome.[3] AGC asserts that its purpose in this case is germane to its litigation goal of preserving entirely competitive bidding by removing the allegedly unconstitutional barrier to the right of all to compete equally for all public works. Courts have construed the germaneness requirement as "undemanding." *Hodel,* 840 F.2d at 58. "An association's litigation interests must be truly unrelated to its organizational objectives before a court will declare that those interests are not germane." *Selby,* 624 F.Supp. at 271. As a trade association of construction contractors interested in furthering the economic interests of the industry, AGC's organizational purpose is "pertinent or relevant" to the issue at bar and thus satisfies the germaneness prong of *Hunt.*

### C.

Finally neither the claim asserted nor the relief requested may require participation of individual members in the litigation. As the declaratory and injunctive relief sought will not focus on any individual member's alleged injury but on the basis for the set-aside, neither proof of the claim nor the relief sought require participation of plaintiff's members. Defendant, however, argues that individual participation is required because plaintiff's members have conflicting interests in the outcome of this suit. It is unclear whether this is "an attempt to add a fourth factor to those

specified by *Hunt* or as an aspect of the third." *National Maritime Union of America v. Commander, MSC,* 824 F.2d 1228, 1232 (D.C.Cir.1987).

Initiation of this litigation was voted by AGC's board of directors on March 23, 1989. Defendant's Exhibit 28. AGC asserts that it is the province of the board of directors to decide the association's position on important matters. The vote was unanimous, twelve board members present and eleven absent. *Id.* On October 11, 1988, AGC members were invited to discuss their experiences with the ordinance. Defendant's Exhibit 16. The membership did not vote regarding the litigation.

Defendant contends that elimination of the set-aside ordinance is adverse to the interests of some of AGC's members. It argues that AGC failed to employ procedural safeguards to assure that its litigation decision represented the will of its members.[4] AGC, on the other hand, asserts that defendant is seeking to add a unanimity prong to the *Hunt* test. *See Sierra Club v. Aluminum Co. of America,* 585 F.Supp. 842, 852 (N.D.N.Y.1984) (court declined to add additional restrictions that an association consult its members or solicit their input into the decision to commence suit); *NCAA v. Califano,* 622 F.2d 1382, 1392 (10th Cir.1980) ("[I]f more members of the association declare against the association's position than declare in favor of it, the association does not have standing, for then the parties in the lawsuit most likely would not be adverse.").[5]

---

3. As defendant has moved to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the court must construe the complaint most favorably to plaintiff and accept all well-plead allegations as true, *Miree v. Dekalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), and assume a favorable litigation outcome to plaintiff for the purposes of this motion.

4. Defendant asserts that when there have been other issues for which there has been conflicts of interest among AGC's members, AGC has both provided more information to members at an earlier stage of the decision making process and has adopted compromise positions or refrained from taking a position due to conflict. As an example, defendant points to AGC's legislative position regarding a bid listing statute

which presented a conflict between general contractor and subcontractor members. Defendant notes that AGC ultimately adopted a compromise position on the issue. Mazza Deposition at 531.

5. The record does not reflect any indication of a number of AGC members who oppose this suit. AGC asserts that it has not received any protests or resignations due to this suit, and that three members have submitted affidavits in support of defendant's motion to dismiss and one has moved to intervene. William Wilson, Contract Compliance Coordinator for the City, testifies by affidavit that five AGC members are certified as women-owned businesses and three AGC members are certified as minority owned businesses. Affidavit of Wilson, ¶¶ 11, 12.

"[A]ssociational standing does not necessarily depend upon the harmony of member interests." *National Maritime Union,* 824 F.2d at 1232. "The [Supreme] Court, in *UAW v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), arguably suggested that conflicting interests of members did not preclude associational standing." *Id.* There, the Court was asked by defendant to reconsider and reject the associational standing test of *Hunt* and require associations wishing to litigate on behalf of their members to proceed under the class-action provisions of Rule 23, Fed.R.Civ.P. Defendant argued that associational standing has no safeguards to guarantee adequacy of representation. The Court rejected this argument and held that the benefits of associational standing outweighed any such problems. The Court noted that associations provide a practical and effective vehicle for individuals to vindicate interests they share with others and that the forces that cause individuals to associate provide some guarantee that the association will work to promote their interests.

The Court, however, was sensitive to defendant's "concern that associations allowed to proceed under *Hunt* will not always be able to represent adequately the interests of all their injured members" and noted that a judgment won against an association might not preclude subsequent claims by members where an association is deficient in representation. *Brock,* 477 U.S. at 290, 106 S.Ct. at 2533. The D.C. Circuit followed this implicit endorsement of the view that associational standing is not defeated by conflicting member interests. *National Maritime Union,* 824 F.2d at 1233; *contra Associated General Contractors v. Otter Tail Power,* 611 F.2d 684, 691 (8th Cir.1979). "[E]ven though created to serve the members' common interests, [all associations] will have internal conflicts about appropriate organizational policies." *Id.* "Courts would ordinarily uphold an

association's determinations against internal challenge unless it were shown that the organization's internal policies had been violated." *Id.* The court also noted that members injured by a litigation victory may have a claim for breach of fiduciary duty or violation of the association's by-laws and that they "could intervene to advance their interests in the merits against the association's position." *Id.* at 1233 n. 9 & 1234.[6]

The asserted conflicting interests among AGC members on this issue does not defeat AGC's standing, although success may harm the legal interests of some members. Unanimity among AGC's members is not a requirement for its standing. Resolution of frictions within AGC's membership is a matter of its governance. As long as the suit is not in contravention of its purposes nor its by-laws which govern its decision making process, it has standing. As AGC meets the *Hunt* requirements for associational standing, defendant's motion to dismiss is denied.

## II. *Motion to Intervene*

The asserted conflict is evidenced by the fact that the National Association of Minority Contractors of Connecticut, Inc. ("NAMC"), B & T Contractors, Inc., a certified minority contractor and a member of both NAMC and AGC, and Appliance Enterprise, Inc., a certified minority contractor and a member of NAMC, have moved to intervene as of right or permissively under Rule 24 as defendants and counterclaimants. All proposed intervenors plead the affirmative defense of laches arguing that plaintiff knew or should have known of the facts underlying this constitutional challenge since 1964 when the ordinance was enacted. B & T, an AGC member, seeks to pursue two additional affirmative defenses: (1) estoppel based on its membership in AGC and AGC's past support of set-asides; and (2) that this suit was not

---

**6.** The court in *National Maritime Union* also noted that members could challenge the association's standing by showing that the procedures for adopting a position had been ignored. 824 F.2d at 1234. Although defendant has taken extensive discovery on the standing issue and criticizes AGC's failure to put the issue of bringing this suit to membership vote, it does not point to any violation of an established AGC procedure or by-law by the board of directors in voting to authorize this suit.

authorized by AGC's members and is thus an ultra vires act. As counterclaims, B & T proposes a claim of breach of AGC's fiduciary duty and duty of loyalty to its members and all intervenors allege a civil conspiracy between AGC and its nonminority members to injure minority contractors financially.

AGC objects to intervention on the basis that the intervenors fail to show that defendant's presentation of the defenses to this action will be inadequate. Alternately, AGC asserts that, should the court grant the application for intervention, the intervenors' participation be limited to the facial challenge to the constitutionality of the set-aside, and that their defenses and counterclaims be dispensed with.

■ There appears to be no basis or need for the intervention of NAMC and Appliance Enterprises. They are not AGC members and their claims are duplicitous of those proposed by B & T, a minority AGC member. NAMC can assert its members' positions, including Appliance Enterprises, through amicus curiae briefs. *See Mrs. W. v. Tirozzi*, 124 F.R.D. 42, 45 (D.Conn.1989).

■ In order to intervene as of right under Rule 24(a)(2), Fed.R.Civ.P., an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) show that representation of its interest by existing parties is inadequate. *See United States v. State of New York*, 820 F.2d 554, 556 (2d Cir. 1987). Failure to satisfy any one of these requirements is sufficient grounds to deny the application. *Id.*

■ The motion was timely filed. B & T, a minority contractor member of AGC, obviously has an interest in the subject matter of this action. *Associated General Contractors v. Secretary of Commerce*, 459 F.Supp. 766, 771 (C.D.Cal.1978). Its interest would clearly be adversely affected by a decision striking down the ordinance in issue. *See New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir.1975) (stare decisis effect of adverse decision can constitute impairment of intervenor's interest in subject matter).

The final issue is whether the interests of B & T are adequately represented by the existing defendant. "An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden 'should be treated as minimal.'" *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978), quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). AGC's argument as to the adequacy of representation is unpersuasive. AGC argued and this court has held that the fact that some AGC members were adverse to its litigation goal did not defeat AGC's standing. AGC now seeks to tell those same dissenting members that their position is adequately represented by the present defendant and that there is no need for their participation as parties. Individual minority or women-owned firms have a different position and interest from that of the City. They may present different insight, arguments and claims from those of the City, including Robert Bolden's, president of B & T, assertion that he opposes this suit and never had the opportunity to voice his opinion about AGC's decision to commence this action. Affidavit of Bolden, ¶ 8.

B & T argues the City is not adequately representative because it is unable to assert B & T's defenses and counterclaims. In addition, B & T asserts that its economic interest in defending the set-aside is distinct from the more general interests of the City and that it is in a better position to offer the proof necessary to uphold the set-aside. While the City is capable and committed to defend its set-aside, B & T has sufficiently shown that as a minority contractor, its interest in the set-aside is compelling economically and thus distinct from that of the City.[7] "A showing that a

---

7. B & T argues that the City's interest may be adverse to its position. It contends that the set-aside may result in increased project costs because, to meet the set-aside requirements, the

very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *United States v. Hooker Chemicals & Plastics*, 749 F.2d 968, 983 (2d Cir.1984). Further, dissenting members "could intervene to advance their interests in the merits against the association's position." *National Maritime Union*, 824 F.2d at 1234. B & T has satisfied the requirements for intervention as of right under Rule 24(a)(2), Fed.R.Civ.P.

■ The next issue is the scope of B & T's participation as an intervenor. AGC argues that this court should exercise its discretion to limit the intervenor's participation to the facial challenge to the constitutionality of the set-aside ordinance. AGC challenges the legal and factual sufficiency of the proposed affirmative defenses and counterclaims at length. However, the issue at bar is the propriety of B & T's intervention and not the legal sufficiency of its proposed defenses and counterclaims. AGC can challenge such through an appropriate motion to which B & T can respond. Accordingly, B & T will be allowed to intervene on the basis of the pleading proffered.

*Summary*

Defendant's motion to dismiss is denied. The motions to intervene of NAMC and Appliance Enterprises are denied and that of B & T is granted. Counsel shall confer and submit a proposed schedule to the court on or before March 21, 1990 for any further discovery, motions and the briefing of such motions, including plaintiff's motion for summary judgment.

SO ORDERED.

lowest bid for particular work may be rejected in favor of a minority-contractor bid. Considering its policy of support for the ordinance, the court will assume that the City will litigate and defend this matter vigorously and in good faith.